MITCHELL *v.* RICHARDSON *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed July 17, 1948.

CHARLIE C. MOORE of Chattanooga, for appellant.

RAULSTON, RAULSTON & SWAFFORD, of South Pittsburg, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This case is here on *certiorari.* Its origin was a chancery court bill filed by R. P. Richardson (in so far as it is of concern here) against the petitioner here, W. S. Mitchell, *et al.* for the purpose of procuring partition of several thousand acres of land owned by complainant and defendants. Defendants were non-residents and were brought in by publication followed by *pro confessos.*

On December 23, 1944 after certain proceedings, a decree was entered whereby these lands were alloted in

kind to the owners in three groups as co-tenants and Richardson, as to whom a certain tract was alloted in severalty. The number of acres alloted to each group and to Richardson was calculated upon the percentage which each owned in all the acres before partition, the commissioners assuming that each acre had the same value as every other acre. No proof as to value was taken.

On June 23, 1945, after the taking of depositions, the Court entered a decree adjudging a fee of $10,000.00 to the lawyers who had filed the partition suit for Richardson and conducted the proceedings thereon. This fee was apportioned between Richardson and the three groups to whom the lands had been respectively partitioned in accordance with the percentage owned by each group in the lands prior to partition, and a lien was declared upon the lands alloted to each group to make certain the payment of that portion of the fees adjudged against that group.

Subsequently, in response to a decree, an advertisement for the sale of these lands on May 11, 1946 to satisfy the lien for these attorneys' fees was had. All proceedings through the advertisement above mentioned were had on *pro confesso* as against the owner of any other interest in these lands, all being non-residents.

On May 1, 1946, prior to the sale advertised for May 11, Mitchell filed his petition in the cause. The issues now are with reference to the action of the Chancellor upon that petition. After alleging that he was a non-resident and had never been served with process, Mitchell in his petition makes allegations which, if true, bring him within the benefits of the Soldiers' and Sailors' Civil Relief Act, 50 U. S. C. A. Appendix, sec. 501 et seq.

The adverse prejudices alleged by this petition, as amended, to have been inflicted upon Mitchell by the partition decree of December 23, 1944 and the decree of June 23, 1945 adjudging attorneys' fees were (1) that Richardson who owned 8.9% of the entire acreage was allotted a tract of 6,367 acres while the Mitchell group, who owned 33.58% of the entire acreage, was alloted 5,496 acres, and that the Stevens interest previously acquire by Richardson owned 2.5% and was alloted one tract of 1262 acres. The Stevens tract cornered the tract alloted to Richardson. The inequality in acres as between the tracts alloted to Richardson and Stevens, respectively, as compared to the acreage alloted the Richardson group, based upon the respective percentages owned is quite apparent, if the commissioners were correct in their assumption that all acres had the same value. However, in addition to this gross inequality in acreage, the petition alleges that, acre for acre, the property set aside to Richardson is more valuable than that set aside to the Mitchell group. (2) It is alleged by the petition that the attorneys' fee is grossly excessive and illegal. The petition concludes with the prayer that the partition decree of December 23, 1944 and the decree of June 23, 1945 fixing attorneys' fee "be set aside and that he (Mitchell) be permitted to file answer to the complaint as if the cause were newly begun".

On May 4, 1946 a decree was entered reciting that it came on to be heard "upon petition of W. S. Mitchell, Jr., heretofore filed on first day of May 1946". This decree directed (1) that the sale advertised for the 11th day of May, 1946 be postponed as to the land set aside to the Mitchell group on condition that Mitchell execute a good bond for $3,358.80 (his part of the attorney's fee)

"conditioned to be void if the petitioner is successful in his petition", and (2) "the postponement of so much of said sale is further conditioned upon the petitioner executing bond for costs of the proceedings on this petition and such expenses as have been incurred in advertising the property herein described for sale on May 11, 1946". (3) That this decree shall not interfere with the sale for the satisfaction of the attorney's fee of the lands set aside to the third group.

This decree and its requirements with reference to the effect that Mitchell's petition should have on postponing the advertised sale was expressly approved by Richardson, appearing by his attorneys of record. Mitchell did not except to the decree, but it was by him personally "approved as to form only". He was representing himself at the time.

This decree of May 4 did not order the dismissal of Mitchell's petition, upon failure to execute the bonds required before the date of the sale, but only postponed the sale on condition that the bonds required by the decree be executed, filed, etc. before that date. Therefore, Mitchell's rights, if any, to have his petition heard upon its merits, as well as his rights, if any, which might result from such hearing remained the same as if the decree of May 4 had never been entered, except in so far as the sale which was had on May 11 might affect the fruits of victory, if successful on his petition.

By reason of Code Section 10460 a decree against a defendant without personal service of process who does not appear to defend is not absolute for three years from the entry of the decree if a copy thereof has not been served upon him. No copy was served upon Mitchell. By code section 10462, therefore, Mitchell had the right

"within three years after the decree, (to) be admitted to answer the bill, upon petition showing merits, and giving security for the payment of costs, and witnesses on both sides may be examined, and such other proceedings may be had thereon as if the cause were then newly begun''. The petition was filed within much less than three years after entry of the decrees which it attacks.

■■ On the case here, we are required to assume the truth of the allegations of Mitchell's petition. So assuming, that petition does reflect upon its face a great abundance of merit which it may be will entitle Mitchell to some or all of the relief which his petition seeks, at least, in so far as such relief does not affect innocent purchasers for value in good faith, if there be such under law applicable to the facts and record in this case.

Mitchell executed none of the bonds required by the June 4 decree and the 5,496 acres alloted to his group was bid in for $1,000.00 by the attorneys who had been allowed a lien upon this land in the amount of $3,358.80 for their services to the Mitchell group in the partition suit. Their bid was transferred to others who have intervened in this case to protect alleged rights as purchasers. A decree was subsequently entered confirming this sale at this price to these assignees.

On June 5, 1946 R. P. Richardson filed his plea in abatement and therein recited that it is filed ''without entering his appearance in said cause except to appear specially through his attorneys for the purpose of filing this plea in abatement, and for no other purpose''. The grounds of the plea are that Richardson ''is not subject to the jurisdiction of the Court'' because (a) ''final decree of partition was rendered in this cause on December 23,

1944'' alloting certain lands to Richardson and (b) ''a decree was entered on June 23, 1945 in this cause fixing and adjudging attorneys' fees and costs against the various parties . . . and said decree has been satisfied in full'' ''and all costs'' paid ''in so far as any rights or liabilities exist in favor or against said R. P. Richardson, and he is, therefore, no longer before the Court in this cause''.

On March 10, 1947 there was entered a decree which recited that the cause came on for hearing ''upon the petition of W. S. Mitchell, Jr., as amended, and upon the pleas in abatement of R. P. Richardson . . . the whole record in the cause and argument of counsel, from all of which it appeared to the Court that the pleas in abatement were well taken and should be sustained and the petition dismissed''. Accordingly, the petition was dismissed.

Apparently, in the filing and considering of this abatement plea in this cause the appearance of Richardson by his attorneys on May 4, 1947 for the purpose of resisting this petition in so far as it affected the previously advertised sale of the lands was overlooked by the Chancellor and the attorneys. Nor does it appear from the decree that either code section 10462 or the Soldiers' and Sailors' Civil Relief Act were considered. We cannot consider Mitchell's assertion in brief that he was not present and knew nothing of this hearing and decree until too late to appeal, because that assertion does not appear as evidence in the record. The decree recites that the petition was dismissed after ''Argument of Counsel''.

Thereafter on September 27, 1947, Mitchell filed the record and petition for writ of error in the Court of Appeals with assignments of error and brief. The brief in

support of the assignments of error states that "the error complained of is the decree of the Chancellor dismissing the petition and refusing the petitioner the right to file an answer in the original cause and protect his rights therein", and that "the petition for leave to answer in this case was based upon section 10460-10462 of the Code of 1932".

However, the first assignment of error in the Court of Appeals is that the Chancellor erred in dismissing the petition and refusing them the right to answer because his petition showed merit as follows: (1) "All decrees were entered against him while he was serving in the United States Army without compliance with the Soldiers and Sailors Relief Act of Congress". The third and fourth assignments of error are directed to the proposition that the petition shows merit by reason of the allegations with reference to the alleged grossly inequitable apportionment of the lands in acreage and value and with reference to the excessiveness and illegality of the attorneys' fees.

The Court of Appeals affirmed the action of the Chancellor in dismissing Mitchell's petition with the statement that it assumed the Chancellor dismissed the petition for "lack of the cost bond required by the statute", and that whether this was or was not the ground for dismissal that "certainly his decree can be sustained upon that ground".

Among the assignments of error here in support of the petition for *certiorari* is one to the effect that Mitchell's petition "showed meritorious defenses" and, therefore, entitled him "upon executing bond for costs, to answer and defend as if the cause were newly begun" since this petition showed him to be "a non-resident defendant,

not served with process and who had not entered appearance", and had filed his petition "within less than three years from the erroneous decree" of which his petition complains. This assignment of error invokes the rights given under code section 10462 to which reference has hereinbefore been made.

Since the petition does show merit, it follows that under code section 10462 Mitchell was entitled to be allowed to file an answer and take such other proceedings thereon, as if the cause were newly begun, unless (1) his failure to give "security for the payment of costs" before the Court considers the merits of his petition does, *ipso facto,* place him beyond the benefits of that code section, or (2) the plea in abatement discussed put his petition out of the case.

Richardson's plea in abatement sustained by the Chancellor was not predicated upon the ground that Mitchell had not filed the cost bond referred to in code section 10462. It was sustained expressly upon the ground that the partition decree of December 23, 1944 and the attorneys' fee decree of June 23, 1945 were final decrees. Therefore, since Richardson was a non-resident the Chancellor held that he had no jurisdiction in this cause over Richardson.

We think the action of the learned Chancellor in sustaining the plea in abatement on those grounds is error. When Richardson as a complainant invoked the aid of that Court to bring about a partition of the lands, he submitted himself to the jurisdiction of the court in that suit for every purpose incident to the final conclusion of that particular suit. One matter that might arise before such final conclusion is that a non-resident defendant against whom a *pro confesso* had been entered

may file a petition under code section 10462 within three years after a final decree for leave to answer the bill and have such other proceedings thereon as "if the cause were then newly begun". It is for this reason, of course, that it was held in *Brown* v. *Brown,* 86 Tenn. 277, 6 S. W. 869, 7 S. W. 640, that process need not issue against parties to the suit upon the filing by a party defendant of a petition under code section 10462. To hold as the learned Chancellor erroneously held amounts to granting immunity to non-resident complainants from requirements imposed by code section 10462 upon our own citizens who become complainants or plaintiffs in one of our Courts. No doubt the Chancellor overlooked that fact.

Since the only reason assigned by the Chancellor's decree for dismissing Mitchell's petition is that the Court did not have jurisdiction of the person of Richardson and it being a fact that he did not dismiss it because Mitchell had not given a bond for payment of costs, there being, in fact, no motion before the Chancellor to that effect, consideration of this case is brought to the question of whether the Court of Appeals was correct in holding that Mitchell's petition was properly dismissed because he had not given the bond for costs referred to in code section 10462.

■ Ordinarily, the execution of a cost bond is not essential to the jurisdiction of the Court, *Howard* v. *Union Bank,* 26 Tenn. 26, 27, and ordinarily that question cannot be raised for the first time in an appellate court. *Tennessee Central Railway Co.* v. *Vance,* 3 Tenn. App. 152, 153. However, it is unnecessary to determine whether these rules apply to code section 10462. Nor is it necessary to determine in this case whether the cost bond required by code section 10462 must be filed with

the petition or after the court on a consideration of that petition has permitted the filing of an answer. We are forced to this conclusion by reason of the fact that Mitchell's petition to intervene in this case alleges that complainant Richardson in the filing of his partition suit and in the proceedings thereon through the partition decree of December 1944 and the attorneys' fee decree of 1945 "failed to comply with the Soldiers' and Sailors' Relief Act of 1940, as amended, insofar as this defendant was concerned in that no affidavit was filed showing that this defendant was a member of the armed forces although complainants well know this to be the case and this court was not apprised of this fact and an attorney was not appointed to defend this defendant with the result that his interests have been greatly prejudiced''.

Article II, sec. 520, subd. 4, Title 50 U. S. C. A. Appendix, being the Soldiers' and Sailors' Civil Relief Act of 1940, provides that when a judgment has been entered against one while in the military service under the conditions alleged in the petition of Mitchell, and above quoted, and that person was prejudiced in his defense because of his military service, then ''such judgment may, upon application, made by such person . . . not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant . . . let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof''.

We have heretofore pointed out that abundant merit is reflected upon the face of Mitchell's petition. It alleges that he has been unable to look after his interest while he was in the service because he was away from

home, engaged in the training of troops and stationed in the Philippine Islands. On the case as here presented we must assume the truth of that allegation. Thus his military service did prejudice him in his defense of his rights. This petition was filed within less than a month after Mitchell's discharge from the army. It alleged facts which brought Mitchell within the privileges of code section 10462, and facts which brought him within the privileges of the federal statute to which we have just referred. The privileges granted by the federal statute did not require Mitchell to file cost bond before his application to file an answer would be considered. For the Court to so require would amount to an amendment by judicial decree of the Soldiers' and Sailors' Act so as to provide that the filing of a cost bond is a prerequisite to consideration of the merits of the petition. It is our thought that the Court of Appeals overlooked consideration of the allegations of the petition with reference to violation of the Soldiers' and Sailors' Act, and that this inadvertence resulted in what we think is an erroneous conclusion.

In view of the above stated necessary conclusions, we must sustain petitioner's assignment of error directed to that holding and decree of the Court of Appeals.

It is insisted in brief that certain decrees of the Chancery Court preceding or with reference to the partition decree and the attorneys' fee decree are void; also in reply brief, that certain rights of *bona fide* purchasers have intervened and cannot be interfered with. This opinion is not to be understood as ruling upon any of these questions, but is limited to holding that petitioner Mitchell may file an answer within such time as is allowed by the Chancellor, and thereupon witnesses on

either side may be examined and such other proceedings may be had thereon "as if the cause were then newly begun". The validity or invalidity of any action already taken will, we take it, be determined by the Chancellor, if properly raised, upon these further proceedings. Since the petitioner concedes it to be his obligation to make a cost bond if allowed to answer, it is assumed that the Chancellor will require such bond.

The decree of the Chancellor and of the Court of Appeals is reversed. The petition of Mitchell to be permitted to answer the bill is allowed, and the cause is remanded for that purpose, and the cause to then be proceeded with as to Mitchell "just as if the cause were newly begun". R. P. Richardson will pay all costs of this appeal. The costs of the lower Court will be determined by the Chancellor at the proper time. All concur.