# RICHARDSON v. MITCHELL et al.
# MITCHELL et al. v. RAULSTON et al.—237
# S. W. (2d) 577.

Middle Section.   December 8, 1950.

Petition for Certiorari denied by Supreme Court, March 9, 1951.

320

Moore & Moore, of Chattanooga, for W. S. Mitchell, et al.

S. P. Raulston, of Jasper, for Raulston and Kelly.

HICKERSON, J. The original bill was filed by R. P. Richardson, Jr., in his individual capacity and as trustee for Margaret Richardson Womack and P. Watt Richardson against various nonresident defendants to partition land in kind. The land consists of many thousands of acres of mountain land lying in Marion, Grundy, and Sequatchie Counties, Tennessee.

An amendment to the original bill struck the word ''Jr.'' wherever it appeared after the name of R. P.

Richardson; struck the names of Margaret Richardson Womack and P. Watt Richardson from the bill; and alleged that R. P. Richardson was the owner of the record legal title to an undivided 8.9397% of the lands sought to be partitioned.

The nonresident defendants were brought before the court by publication and the cause proceeded upon a pro confesso as to them.

Commissioners were appointed under the usual procedure to partition the land in kind and report to the court. These commissioners made their report as follows:

(a) R. P. Richardson was allotted land in severalty representing 8.9397% interest in all the land.

(b) James R. Stevens, III, and Mrs. Elsie D. Stevens were allotted land as tenants in common, representing 2.5543% interest in all the land. We shall refer to this group as the Stevens interest.

(c) W. S. Mitchell, Sr., W. S. Mitchell, Jr., Mrs. Lois Roots Hemingway, and Mrs. Miriam Roots Crawford were allotted land as tenants in common, representing 33.588% interest in all the land. We shall refer to this group as the Mitchell interest.

(d) Milton M. Eagan, P. K. Lutkin, and N. B. Hinkley were allotted land as tenants in common, representing 54.9175% interest in all the land. We shall refer to this group as the Eagan group.

This report of the commissioners was confirmed by chambers decree in which the solicitors for complainant were awarded a reasonable fee for their services; and a reference was ordered to ascertain the amount. Proof was taken upon the reference, and a report of the master was confirmed fixing this fee at $10,000. The fee was allocated amongst the various owners according to their

interests in all the land; that is, against the Richardson interest for $893.97; against the Stevens interest for $255.43; against the Mitchell interest for $3,358.80; and against the Eagan interest for $5,491.47. This decree provided: ''In the event said fees are not paid within 60 days from date of entry of this order the lien herein fixed and declared shall be enforced with reference to the lands of any or all the parties hereto who have failed to pay the amount of fee herein adjudged against them by the sale of the lands or such portion thereof as is necessary; and to this end, in event default is made in the payment of said fees by all or any of the parties against whom the same have herein been fixed and allowed, the Clerk and Master is directed to sell the property, or such portion as is necessary, according to law, at the east door of the courthouse in Jasper, Tennessee, on terms of one-third cash and the balance on credit of six and 12 months to the highest and best bidder, taking notes with security, drawing interest from date, and retaining a lien on the lands for further security; said sale to be made in bar of the equity of redemption, the title of the purchaser to be absolute.''

That part of the fee which was awarded against the Richardson interest and against the Stevens interest was paid. That part of the fee which was awarded against the Mitchell interest and against the Eagan interest was not paid.

In obedience to the decree fixing the fee, the clerk and master sold all the lands which represented the Mitchell interest and the Eagan interest on May 11, 1946; and A. A. Kelly and Burnett Sizer, solicitors for complainant, became the purchasers at a bid of $500 for the Eagan lands and $1,000 for the Mitchell lands. These purchasers complied with the terms of the sale by credit-

ing their judgment against the Eagan interest with $500 and against the Mitchell interest with $1,000.

Burnett Sizer and A. A. Kelly assigned their bid to S. P. Raulston and Paul D. W. Kelly; and the sale was confirmed to them on June 29, 1946.

On May 1, 1946, prior to this sale, W. S. Mitchell, Jr., one of the nonresident defendants who had been brought before the court by publication, filed a petition in the cause to set aside the former decrees and permit him to file an answer and proceed, "as if the cause were then newly begun." Code Section 10462.

The chancellor denied the petition, and the Court of Appeals affirmed. The Supreme Court reversed and stated, Mitchell v. Richardson, 187 Tenn. 189, 213 S. W. (2d) 111, 115: "It is insisted in brief that certain decrees of the Chancery Court proceeding or with reference to the partition decree and the attorneys' fee decree are void; also in reply brief, that certain rights of bona fide purchasers have intervened and cannot be interfered with. This opinion is not to be understood as ruling upon any of these questions, but is limited to holding that petitioner Mitchell may file an answer within such time as is allowed by the chancellor, and thereupon witnesses on either side may be examined and such other proceedings may be had thereon 'as if the cause were then newly begun'. The validity or invalidity of any action already taken will, we take it, be determined by the Chancellor, if properly raised, upon these further proceedings."

S. P. Raulston and Paul D. W. Kelly sold part of the land which they had purchased as assignee of the bid of A. A. Kelly and Burnett Sizer to Sam Anderson by deed dated December 16, 1946; and they sold part of it to

H. E. Hoodenpyl and C. C. Parker by deed dated October 18, 1946.

On September 8, 1947, the Mitchell interest filed a petition in the cause, later amended, by which they sought leave to answer and by cross bill to have all former decrees in the cause declared void and to have the conveyances based upon such decrees declared to be a cloud upon the title of the Mitchell interest in all the land and cancelled and removed as such.

This petition was granted, and on March 8, 1948, the Mitchell interest filed their answer and cross bill.

On September 13, 1948, Charles C. Moore was allowed to intervene and become a joint party complainant to the cross bill. He alleged that he had purchased all of the interests of all of the tenants in common in the land sought to be partitioned in the original bill, except the land located in Grundy County which had been allotted to R. P. Richardson and to the Stevens interest by the commissioners and confirmed to them by the court; and that the owners of the different interests had, by agreement, partitioned their lands in kind amongst themselves.

R. P. Richardson filed a petition in the cause on September 10, 1948, in which he alleged that he, Charles C. Moore, and F. B. Kemp owned as tenants in common all the lands sought to be partitioned in kind in the original bill; that they had partitioned the lands by agreement amongst themselves; and that they had executed and delivered deeds to each other to carry the partition agreement into effect. He prayed that this partition, made by the parties by agreement, be ratified and confirmed by the court, "without prejudice to the prosecution of the cross bill to determine issues arising thereunder."

Various defenses were interposed to the petition of Charles C. Moore and to the petition of R. P. Richardson.

The cause came on to be heard upon the merits before the chancellor, especially upon the answer and cross bill, the defensive pleadings thereto, the petitions of Charles C. Moore and R. P. Richardson, the defensive pleadings thereto, the testimony and the whole record.

The chancellor stated in his opinion:

"The effect of the order sustaining the petition filed by group II, the Mitchell heirs, was to vacate as to them the orders and decrees previously entered in this cause. This would have left them, therefore, entitled to answer and make defense to the original bill but, meanwhile, they had sold out to Mr. Moore. Necessarily Mr. Moore has acquired no greater rights in the premises than his predecessors in title enjoyed. His relief under the cross-bill, therefore, is granted to the extent that the deed by the Clerk & Master to Kelly and Raulston will be declared a cloud on title only in so far as it affects the interests he acquired from Group II, the Mitchell heirs; limited further to the extent that in so far as the cross-bill seeks to declare and remove as a cloud on title the deed of Kelly and Raulston to Hoodenpyl and Parker and to Sam Anderson, it will be dismissed. The Court is of opinion that these cross-defendants can invoke the aid of Section 10464 of the Code.

"For the purpose and to the extent indicated the petition of Charles C. Moore seeking to become a cross-complainant, is sustained and final decree will be entered on the cross-bill as indicated.

"The petition of R. P. Richardson, seeking confirmation of the original partition subject to the rights of the parties to prosecute the cross-bill will be dismissed at his cost. By what authority such petition is filed has

not been cited and none by the court can be found. The balance of the costs of the cause are adjudged one-half against cross-complainant, Charles C. Moore, and one-half against cross-defendants, Kelly and Raulston."

The decree of the chancery court, based upon this opinion, provides:

"It is therefore ordered, adjudged and decreed that the cross-complainant Charles C. Moore recover the interests in the lands conveyed to him by W. S. Mitchell et al., being .33.588 percent of all lands sold to Paul D. W. Kelly and S. P. Raulston by S. L. Havron, Clerk & Master, except as to the tracts conveyed by said Kelly and Raulston to H. E. Hoodenpyl and C. C. Parker and to Sam Anderson, to which tracts relief is denied and the cross bill dismissed.

"The deed of S. L. Havron, Clerk & Master, to Paul D. W. Kelly is cancelled and removed as a cloud on cross-complainant C. C. Moore to the extent of 33.588 percent interest in all the lands sold to Paul Kelly and S. P. Raulston by S. L. Havron, Clerk & Master, except as to the said tracts conveyed by Kelly and Raulston to Sam Anderson and H. E. Hoodenpyl and C. C. Parker.

"The petition of R. P. Richardson filed on September 10, 1948, seeking a confirmation of the partition between the parties to the original bill is dismissed at the costs of said petitioner.

"A reference is ordered to determine the amount and value of the timber cut from the lands by or under the authority of Paul Kelly and S. P. Raulston and on the incoming of the report the cross-complainant C. C. Moore will have and recover of the cross-defendants Paul D. W. Kelly and S. P. Raulston the reasonable value of 33.599 percent of the timber cut by said defendants. The reason-

able stumpage value will be the basis of fixing value of such timber.

"The costs of the cause are adjudged as directed in the opinion for which execution will issue.

"To the action of the court in dismissing his cross bill as to the 66.412 percent interest in the land sued for and in denying relief and dismissing the cross bill as to the lands sold by Paul D. W. Kelly and S. P. Raulston to Sam Anderson, H. E. Hoodenpyl and C. C. Parker, the cross-complainant excepted and now excepts and prays and is granted an appeal to the next term of the Court of Appeals at Nashville, Tennessee, which is granted upon appeal bond being filed within thirty days from the entry of this order.

"To that part of the decree sustaining the cross bill as to 33.588 percent of the lands and awarding the cross-complainant a decree therefor the cross-defendants, Paul D. W. Kelly and S. P. Raulston excepted, now except and pray and are granted an appeal to the Court of Appeals at Nashville, Tennessee. Thirty days are allowed for filing appeal bond."

Cross complainants and Paul D. W. Kelly and S. P. Raulston perfected limited appeals to this court.

We shall first consider and determine the questions made by the assignments filed in behalf of cross complainants:

■ 1. It is assigned as error that the original decree confirming the report of the commissioners by which the lands were partitioned in kind and under which solicitors for complainant were awarded a reasonable fee for their services in the cause was void because: (1) The court had no power to allot certain tracts of land to groups of defendants to be held by them as tenants in

common without their consent. (2) The court had no power to confirm this sale at chambers without notice. (3) The court was exercising a special or limited jurisdiction, conferred by statute, in entering this decree at chambers; and the decree must show on its face that the court had jurisdiction to enter it.

(1) Code Section 9168 provides: ''Mode of partition.—In these cases the partition shall be made according to the respective rights of the parties, setting apart to such as desire it their shares in severalty, and leaving the shares of others, if desired, in common; and if there are minors, the court may, in its discretion, leave their shares in common, or set them apart to each in severalty, as may appear to be just, upon the proof introduced.''

It is contended by cross complainants that the chancellor had no power under this statute to allot land in this partition suit to defendants to be held by them as tenants in common in the absence of their consent which was not given.

We think the last clause of Code Section 9168 compels the construction of the first clause for which cross complainants contend. The last clause deals with the interests of minors, who cannot consent; and the court is given the power, ''in its discretion'' to ''leave their shares in common, or set them apart to each in severalty, as may appear to be just, upon the proof introduced.''

The first clause deals with persons who are sui juris, and no discretion is given to the chancellor to leave their shares to be held in common without their consent.

Code Section 9209 is a somewhat similar statute, which provides: ''Sale of life estate with rest.—The court may, with the assent of the person entitled to an estate in dower, or by curtesy, or for life, to the whole or any part

of the premises, who is a party to the proceedings, sell such estate with the rest."

Code Section 9209 was construed in Helmick v. Wells, 171 Tenn. 265, 102 S. W. (2d) 58, wherein the court said: "Wells has not consented to a sale of his life estate; on the contrary, he resists such sale. In the absence of such consent, a decree ordering the sale of the life estate, along with the other interests in the land, for division, would be in violation of section 9209 of the Code, and therefore void."

The original decree confirming the report of the commissioners was void because the court had no power under the statute to allot certain lands under this partition proceeding to be held by the parties to the suit as tenants in common without their consent which was not given. The facts of the present case justify and demand that this construction of the statute be given. An attorney's fee was charged against the Eagan interest in the sum of $5,491.47. This group represented an interest of 54.9175% of all the land sought to be partitioned. Three parties owned this interest. The lands allotted to them consisted of many thousands of acres to be held by them as tenants in common. The land so allotted to them was sold as a whole to satisfy this judgment for the solicitors' fee against their interest. In order to protect himself each of the three parties who owned this land would have been compelled to pay the entire sum of $5,491.47 for this amount was awarded against all of them in a lump sum. Now it could well be that one member of the Eagan group might have wanted to pay his part of the fee so as to keep his land, but he could not do so under the decree and the sale. We hold the court was compelled to allot to each tenant in common his part

of the land in severalty unless they agreed to have the land allotted to them as tenants in common.

■ (2) The original decree confirming the report of the commissioners was entered at chambers with no notice to cross complainants. They contend the decree was void for that reason.

Concerning confirmation of land sales at chambers by the chancellor, Code Section 10504 provides: ''The chancellor at chambers, or in vacation, is empowered to hear and determine as to the confirmation of reports of sales, and to the same extent and as effectually as in open court during term; provided, however, that the defendant or party adversely affected, or his solicitor of record, be given five days' written notice, or accept or waive notice in writing, of the day, hour and place when such report will be presented to the chancellor, in vacation or at chambers.''

Our Supreme Court construed this statute relating to confirmation of land sales by the chancellor at chambers, prior to the 1925 amendment of the statute, in Jordan v. Jordan, 145 Tenn. 378, 239 S. W. 423, 430, where the court held that a confirmation of a sale of land by the chancellor at chambers without notice was void. The court said:

''Certainly the chancellor was without power and his action was void in pronouncing this chambers decree unless the power and authority therefor is found in the acts above referred to. A court cannot validly adjudicate the subject-matter which does not fall within its province as defined and limited by law. Chickamauga Trust Co. v. Lonas, 139 Tenn. 228, 201 S. W. 777, L. R. A. 1918D, 451.

''The mere consent of parties or waiver of the court's action cannot confer power upon the court to act in cases where it is not conferred by law. His action is a

mere nullity, absolutely void, and subject to collateral attack.''

This decision was announced before Chapter 124, Acts of 1925, relating to confirmation of land sales at chambers by chancellor was enacted. The 1925 Act in no way affected the decision of the court in Jordan v. Jordan.

In Chickamauga Trust Company v. Lonas, 139 Tenn. 228, 201 S. W. 777, 778, L. R. A. 1918D, 451, our Supreme Court approved this statement of the rule taken from 15 R. C. L. 853:

''While it is well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. Even where a court has jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted it by the law of its organization, its decree is void. Thus a judgment may be collaterally attacked where the court had jurisdiction of the parties and the subject-matter of action, but did not have jurisdiction of the question which the judgment assumed to determine, or to grant the particular relief which it assumed to afford to the litigants. . . .

''One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting its jurisdiction. . . . Where a court is authorized by statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire jurisdiction, and its judgment will be a nullity and subject to collateral attack.''

If we assume that the confirmation of a report partitioning land in kind would be treated as a "sale for partition" and give the chancellor the power to confirm the report at chambers under Code Section 10504, we think notice of the confirmation must be given to the parties adversely affected in order to confer jurisdiction upon the chancery court to enter the decree of confirmation. In such cases, notice to the defendant, or to the party adversely affected, as required by this statute of, "the day, hour, and place when such report will be presented to the chancellor," is as essential to the jurisdiction of the chancellor to enter the decree at chambers as the service of process upon an original bill is essential to the jurisdiction of the court. Service of process upon the defendant under an original bill is necessary to give the court jurisdiction of the person. Notice of confirmation at chambers is necessary to give the chancellor the special jurisdiction conferred by this statute to confirm a sale at chambers.

■■■ (3) The chancery court is a court of general jurisdiction. When it exercises this general jurisdiction, there is a presumption that no jurisdictional defect existed in the absence of a showing to the contrary. Here, however, the chancery court was exercising a special and limited jurisdiction expressly conferred by statute: to confirm land sales at chambers.

In such cases, our Supreme Court said in New York Casualty Company v. Lawson, 160 Tenn. 329, 24 S. W. (2d) 881, 883:

"The bill does not impeach the judgment as voidable upon any such ground of equitable relief. It attacks it as void. A void judgment is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment, which want of

jurisdiction may be either of the person, or of the subject-matter generally, or of the particular question attempted to be decided or the relief assumed to be given. Chickamauga Trust Co[mpany] v. Lonas, 139 Tenn. 228, 235, 201 S. W. 777, L. R. A. 1918D, 451; Vanvabry v. Staton, 88 Tenn. 353 [334], 12 S. W. 786; Finley v. Gaut, 67 Tenn. (8 Baxt.), [148] 149; Holmes v. Eason, 76 Tenn. (8 Lea) [754], 755.

"It may be said that, in the absence of such an affirmative showing of a jurisdictional defect, there is a presumption that none existed. While this is the rule which is applied to a judgment of a court of general jurisdiction rendered in the exercise of such jurisdiction, it is not the rule for a judgment of a court of special and limited jurisdiction or for a judgment of a court of general jurisdiction where such judgment rests, not upon such general jurisdiction, but upon special and limited powers derived from statute. The rule for a judgment of either of these kinds is that every jurisdictional fact must affirmatively appear upon the record, or the judgment is void. This is true of judgments in attachment proceedings. Harris v. Hadden, 75 Tenn. (7 Lea), 215; Ingle v. McCurrey [McCurry] 48 Tenn. (1 Heisk.), [26] 29; Walker v. Cottrell, 65 Tenn. (6 Baxt.) [256] 257; Pope v. Harrison, 84 Tenn. (16 Lea), 82, 95."

See also Magevney v. Karsch, 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343; and Carney v. McDonald, 57 Tenn. 232. In this latter case, the court held: "It appears that the motion was made within twelve months, and while the cause was still in court, for the execution of the judgment. The court, therefore, had the power to order the correction of the clerical mistake. But in doing so, the Judge was in the exercise of a special jurisdiction—a jurisdiction which by the principles of

the common law, he could not have exercised. It was therefore essential to the validity of the order made, that it should have shown, either that the error was apparent on the record, or in the papers, or on the minutes of the Judge; and in addition, it should appear that the opposite party was duly notified. None of these essential requisites appear in the record ordering the correction. We are, therefore, of opinion that this order was a nullity.''

It is our conclusion that the jurisdictional facts must appear in the face of the decree where land sales are confirmed at chambers; otherwise the decrees are void and of no effect and may be attacked collaterally.

■ 2. It is assigned as error that the whole proceeding is void because the court did not have jurisdiction of the subject matter.

Cross complainants assert that R. P. Richardson, Jr., as trustee, filed the bill; that by amendment the word ''Jr.'' was stricken from the bill; and the names of the other parties complainant were stricken, leaving the sole complainant as R. P. Richardson as trustee; and that legal title to no portion of the land was vested in R. P. Richardson, trustee.

There is no merit in this assignment. The bill, as amended, taking the caption and the body, shows that R. P. Richardson as trustee and individually brought the suit. It was expressly alleged that legal title to the land of the Richardson interest was vested in R. P. Richardson. The proof shows this to be true. The averments of the bill, as amended, and the proof, give the court jurisdiction of the subject matter in so far as it was necessary to allege and prove that R. P. Richardson was the owner of the legal title to the undivided

interest in the land sought to be partitioned. It matters not that the caption showed that R. P. Richardson, trustee, brought the suit. Rose v. Third National Bank, 27 Tenn. App. 553, 183 S. W. (2d) 1; Altman v. Third National Bank, 30 Tenn. App. 81, 203 S. W. (2d) 701.

3. Cross complainants assign as error that the proceedings relating to the sale to satisfy the decree for attorneys' fees are void and state several reasons in support of this assignment. These proceedings relating to the sale of the lands of the Mitchell interest and of the Eagan interest to satisfy the decree for attorneys' fees awarded against these interests stem from the original decree confirming the report of the commissioners at chambers whereby the land was partitioned in kind and a reasonable attorneys' fee was awarded to the solicitors for complainant. Having held that this original decree is void, a nullity and of no effect, it follows that all proceedings had thereunder are likewise void. Wherefore, it is not necessary for us to respond to each reason advanced by cross complainants why these subsequent proceedings are void. We might add that cross complainants contend these subsequent proceedings were void for substantially the same reasons which they gave in regard to the original decree.

4. Cross complainants assign as error that the chancellor dismissed their cross bill as to A. G. Hoodenpyl, C. C. Parker, and Sam Anderson; and refused to set aside the deeds from S. P. Raulston and Paul D. W. Kelly to these parties as a cloud upon the title of cross complainants.

Cross defendants contend that they and their vendees are protected by Code Section 10464 which provides: "Decree will confer good title.—The decree if executed

before ·it is set aside under any of the foregoing· provisions, shall be a protection to all persons acting upon its validity, and confer a good title to all property sold under it.''

Cross defendants further contend that they and their vendees are protected by Code Section 10503, which provides: ''Irregularities, lack of notice, etc., cured unless objection is made, when.—Any lack of notice or mere irregularity or failure to comply with the provisions of this article shall be cured unless objections shall be made and proper steps to take advantage of same shall be.taken before or during the next regular or special term of said court succeeding the entry of such order or decree on the minutes by the clerk and master.''

We have held that the chancellor did not have jurisdiction to enter these chambers decrees which are attacked. Not having jurisdiction, the decrees are void, a nullity, have no force and effect against anyone, and can be collaterally attacked. The jurisdictional facts had to be stated in the decrees to make them presumptively valid when the chancellor attempted to exercise the special and limited jurisdiction conferred upon him by statute to confirm land sales at chambers. These jurisdictional facts do not appear in the decrees.

Wherefore, the partition proceedings and all chambers decrees entered therein are void on their face for lack of jurisdictional facts stated therein; and such decrees cannot protect S. P. Raulston and Paul D. W. Kelly or their vendees under the foregoing Code Sections. Chickamauga Trust Company v. Lonas, 139 Tenn. 228, 201 S. W. 777, L. R. A. 1918D, 451; Jordan v. Jordan, 145 Tenn. 378, 239 S. W. 423; New York Casualty Company v. Lawson, 160 Tenn. 329, 24 S. W. (2d) 881;

Magevney v. Karsch, 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343.

5. Error is assigned that the court held that Charles C. Moore came into court with unclean hands, "and for this reason the court, as nearly as possible, will leave the parties where it found them at the time of filing the answer and cross bill."

Charles C. Moore had been attempting for many months to buy the Mitchell interest in the lands in controversy. The negotiations between him and the Mitchell interest resulted in a contract between the Mitchell interest and Charles C. Moore whereby Mr. Moore did purchase this interest for $3,000. This contract is dated September 3, 1947, and provides that Charles C. Moore will prosecute the suit of the Mitchell interest to clear the title to the land involved in the contract.

We do not know of any rule which would forbid the Mitchell interest from entering into this contract to sell their interest in the land involved in the partition proceeding with the provision that they would prosecute their suit to clear the title to the land, Mr. Moore acting as their attorney. According to their contract, Charles C. Moore, acting as attorney for the Mitchell interest, on September 8, 1947, filed a petition in the cause in their name to be allowed to defend by answer and cross bill as if the suit were then newly begun. The petition showed merit and these parties were granted leave to file their answer and cross bill.

Captain W. S. Mitchell, Jr., had theretofore filed a similar petition in the cause which had been denied by the chancellor. He reviewed this decree in the appellate courts, Mr. Moore acting as his attorney, with the result that the Supreme Court held that Captain W. S. Mitchell,

Jr., who was a lawyer himself, could defend the partition proceeding. Mitchell v. Richardson, 187 Tenn. 189, 197, 213 S. W. (2d) 111.

Pursuant to the leave granted them so to do under their petition of September 8, 1947, the Mitchell interest filed their answer and cross bill on March 8, 1948. This answer and cross bill related back to the filing of the petition. Bledsoe v. Wright, 61 Tenn. 471.

On September 17, 1947, the Mitchell interest executed a deed conveying their part in the land to Charles C. Moore. This deed was placed in escrow with the Hamilton National Bank and was delivered to Charles C. Moore on May 13, 1948.

R. P. Richardson and F. B. Kemp had acquired all the interests in the land sought to be partitioned prior to November 27, 1947, except the Mitchell interest. They had agreed with Charles C. Moore to partition these lands in kind by agreement. Deeds were executed for that purpose and placed in escrow with the Hamilton National Bank. The deed from F. B. Kemp and R. P. Richardson to Charles C. Moore is dated November 24, 1947. It was delivered to Charles C. Moore by the escrow agent on August 31, 1948. The deed from Moore to Richardson is dated November 24, 1947. It was delivered by the escrow agent to Richardson on August 31, 1948.

The deed from Moore to Richardson contains this provision: "The property herein conveyed was acquired by the Grantor by virtue of a deed of W. S. Mitchell, et al. dated Sept. 17, 1947 and recorded in the Register's Office, Altamont, Tennessee, in Deed Book 'QQ', page 593."

In explanation of this provision it is shown that the book and page where the deed from W. S. Mitchell, et

al., to Charles C. Moore was registered in the Register's Office of Grundy County, Tennessee, was left blank in the deed from Moore to Richardson and Kemp as that deed was originally prepared; and that these blanks were filled in when the deed was recorded in compliance with Code Section 8085-8086. This deed shows on its face that it was, "filed for registration May 18, 1948." Since the deed from Mitchell to Moore was not delivered to Moore until May 13, 1948, and was not filed for registration until May 18, 1948, it would have been impossible to state the book and page where it was registered when the deed from Charles C. Moore to R. P. Richardson and F. B. Kemp was executed on November 24, 1947.

In reaching the conclusion that Charles C. Moore came into court with unclean hands, the chancellor stated: "The answer and cross bill alleged that respondents owned an undivided interest of approximately one-third of all the lands in controversy. This answer and cross bill was sworn to by Charles C. Moore, notwithstanding the fact that he had bought out the respondents and had himself on the 24th day of November 1947, 'made peace' with the complainant, R. P. Richardson, whose bill and the attending proceeding thereon were under fire in the answer and cross bill. In his petition filed September 14, 1948, he says, 'These conveyances operate to compromise and settle all controversies between the parties to the original bill in this cause, leaving for determination only the issues arising under the said cross-bill.' To this end he seeks to be permitted to prosecute the cross bill in his own right."

We have, therefore, this case: Charles C. Moore purchased the Mitchell interest by deed dated September 17, 1947; but the deed was held in escrow and not delivered

to him until May 13, 1948. The Mitchell interest and Charles C. Moore had agreed that the deed would not be delivered until the grantors could file the suit to clear their title. It is the rule that a deed does not become effective so as to pass title until it is delivered. The intention of the grantor determines the time and conditions of the delivery. Tanksley v. Tanksley, 145 Tenn. 468, 239 S. W. 766; Wilson v. Winters, 108 Tenn. 398, 67 S. W. 800.

We find no misconduct on the part of Mr. Moore in this transaction. He simply wanted to buy the Mitchell interest, and did so under a contract and deed which deed permitted the Mitchell interest to file suit to clear their title before the deed was delivered, accepted, and the title passed. This was clearly the intention of the Mitchell interest and Charles C. Moore. The Mitchell interest certainly had the right to intervene and protect their interest by answer and cross bill. Their dealings with Mr. Moore should be liberally construed to preserve their rights, not to destroy them.

When Charles C. Moore was later permitted to intervene and become a party complainant to the answer and cross bill, his suit would be treated as a suit of the Mitchell interest. He should not be repelled on the theory of unclean hands.

6. Under the fourth assignment, cross complainants insist that the chancellor erred in refusing to enter the compromise decree between the parties to the original bill and their vendees as owners of the land in controversy.

This assignment cannot be sustained for two reasons:

(1) Cross complainants prayed a limited appeal, and they did not appeal from that part of the decree of the

chancellor in which he refused to enter the compromise decree of the parties.

(2) Cross complainants were allowed to file their answer and cross bill. The relief prayed for therein was granted them. The chambers decrees in the partition proceeding have been declared void. The owners of the land do not need the aid of the chancery court to partition their lands in kind amongst themselves. Being sui juris, they can effect such partition by their own conveyances. Upon the remand they can move to dismiss the original bill.

7. Defendants contend that cross complainants are estopped to assert that the chambers decrees are void.

It is the contention of defendants that R. P. Richardson filed the original bill; that all decrees were entered upon his suit; and that he is estopped to attack the decrees.

(1) R. P. Richardson is not attacking the decrees. They are attacked by nonresident defendants who were brought before the court by publication; and against whom the decrees were entered upon pro confesso, at chambers, without notice as required by the statute to give the court jurisdiction.

(2) Where decrees, by which land is partitioned in kind, allotting certain tracts to parties to the suit to be held as tenants in common, are declared void at the suit of one or more parties to the suit, they are void as to all parties to the suit. The only recourse which R. P. Richardson would have had if he wanted to continue with his partition suit was to start at the beginning and have a new partition of the land. Of necessity, that made the decrees void as to him.

Brown v. Brown, 86 Tenn. 277, 6 S. W. 869, 7 S. W. 640, relied on by defendants to support their contention,

is not in conflict with this opinion. That case involved the construction of a will. H. A. Brown had litigated the case to a conclusion and had sought to relitigate the case. His interests were not affected by the intervention of the nonresident defendants, so he was not permitted to relitigate.

The chambers decrees were void as to all parties to the suit.

8. For the reasons stated herein the assignments of error filed in behalf of S. P. Raulston and Paul D. W. Kelly are overruled. The Mitchell interest clearly had the right to intervene and proceed, ''as if the cause were then newly begun.'' Code Section 10462; Mitchell v. Richardson, supra.

The decree of the chancery court will be modified to this extent: (1) The deed from S. L. Havron, Clerk and Master, to S. P. Raulston and Paul D. W. Kelly will be cancelled and removed as a cloud upon the title of appellants—cross complainants—as to the 66.412% interest in all the land in question, this being the Richardson interest, the Stevens interest, and the Eagan interest.

(2) The deeds from S. P. Raulston and Paul D. W. Kelly to H. E. Hoodenpyl and C. C. Parker and to Sam Anderson will be cancelled and removed as a cloud upon the title of appellants—cross complainants.

(3) Upon a remand appellants—cross complainants—may assert their claim for timber cut and removed by these cross defendants.

(4) In all other respects the decree of the chancery court is affirmed.

(5) The costs of the appeal are taxed against Paul D. W. Kelly and S. P. Raulston as principals and J. T.

Raulston and H. G. Swafford, the sureties on the appeal bond. The costs in the chancery court will stand as adjudged by the chancellor.

Remand to enforce the decree and for such other proceedings as may seem proper to the chancellor.

Howell, J., and Kizer, Special J., concur.