STATE of Tennessee, Appellee,

v.

James Norman HARRIS, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

March 22, 1984.

Permission to Appeal Denied by
Supreme Court July 9, 1984.

L.L. Harrell, Jr., Trenton, for appellant.

William M. Leech, Jr., Atty. Gen., Raymond S. Leathers, Asst. Atty. Gen., Nashville, William R. Kinton, Dist. Atty. Gen., A.H. Schoonover, Theodore Neumann, Asst. Dist. Attys. Gen., Trenton, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, James Norman Harris, was convicted of aggravated sexual battery and received a penitentiary sentence of not less than five (5) years nor more than five (5) years. On appeal he challenges the sufficiency of the evidence, claims that the venue of the crime was not proven, alleges the trial court lacked jurisdiction over the case, and asserts that he should have been sentenced by the trial judge rather than by the jury. We find no merit to these complaints.

The victim of this crime, a five (5) year old girl—six (6) years old at the time of the trial—was the step-grandchild of the defendant at the time the offense occurred.[1] The victim testified that she and her mother were living with her grandmother and the defendant in the grandparents' home during the summer of 1982. She testified that one morning when her mother and grandmother had gone to work, the defendant got on top of her, lying face to face with her, and went up and down on her while he rubbed his "paw paw" on her. She confirmed, on direct examination, that "paw paw" referred to the defendant's private parts. The victim demonstrated to the jury, by pointing to the vaginal area of her own body where the defendant had rubbed his private parts on hers.

The young victim testified that she thought the defendant kept his clothes on, and thought he took his private parts out where she could see them. She also stated he touched her private parts with his hands, and she thought the defendant went inside her clothing to do so. She said that after the incident, the defendant went to the bathroom to wash, and that he told her not to tell anyone about what happened.

The victim's mother, Mary Weathers, testified that she and her daughter were living with the defendant and her mother in Gibson County from March to the "[l]ast of June—first of July," 1982. She said that "about three (3) weeks" after they moved out, her little girl became extremely upset and told her about the defendant's attack on her.

The defendant testified and denied that he sexually assaulted the victim.

■ The jury accredited the testimony of the State's witnesses. We find the evidence to be sufficient to meet the evidentiary requirements of T.R.A.P. 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The defendant also claims that the evidence was insufficient to prove that the offense occurred in Gibson County. There is no merit to the claim.

■ The victim's mother, Mary Weathers, testified that she and her daughter moved to Gibson County to live with her mother and step-father in March, 1982. The victim testified that this offense occurred while she was living with her grand-

---

1. The victim's grandmother divorced the defendant after his arrest for this crime.

mother and the defendant. Venue may be established by a preponderance of the evidence and it is not necessary that it be shown beyond a reasonable doubt. _State v. Baker_, 639 S.W.2d 670, 672 (Tenn.Cr. App.1982). Also, venue may be proven by circumstantial evidence. _Gilliland v. State_, 187 Tenn. 592, 216 S.W.2d 323 (1948). We find that under the evidence in this case the jury was clearly warranted in finding that the crime was committed in Gibson County.

The defendant next argues that the State was also obligated to prove that the offense occurred within that portion of Gibson County which falls within the jurisdiction of the Gibson County Circuit Court, rather than the jurisdiction of the Humboldt Law Court. We disagree.

The Humboldt Law Court was created by chapter 22, 1868–1869 Tenn.Pub.Acts, which reads in pertinent part as follows:

Sec. 2. _Be it further enacted_, That the Law Court of Humboldt has general common law jurisdiction, original and appellate, in all cases at law, of a civil or criminal character, arising in the civil districts named in the first section of this Act, and that no resident of said districts shall be sued in the Circuit Court of Gibson County, nor presented or indicted therein, unless the offense was committed in the county out of said districts. Where the court has the jurisdiction of the cause of action, counterparts of writs may issue from said court for joint defendants residing out of said districts.

Pursuant to this Act, criminal cases arising from the civil districts within the jurisdiction of the Humboldt Law Court are tried in that court.

First, as we have found, the State met its burden in establishing venue of the crime, thus fulfilling the requirement of Art. 1, § 9 of the Tennessee Constitution that a defendant shall have the right to trial "by an impartial jury of the county in which the crime shall have been committed." Therefore, no constitutional right of the defendant has been abridged.

■ Second, the evidence established that the house in which the crime occurred was located between the cities of Trenton and Rutherford, Tennessee. We may take judicial notice that this area of Gibson County is not within any of the civil districts that comprise the jurisdiction of the Humboldt Law Court; rather, this area of Gibson County lies within one of the civil districts within the jurisdiction of the Gibson County Circuit Court. Therefore, as we see it, the record demonstrates the jurisdictional authority of the trial court to try the defendant's case.

■ Third, the Gibson County Circuit Court is a court of general jurisdiction and is authorized to try criminal cases. The law is that where a court exercises general jurisdiction, then there is a presumption that no jurisdictional defect exists in the absence of an affirmative showing to the contrary. _New York Casualty Company v. Lawson_, 160 Tenn. 329, 24 S.W.2d 881, 883 (1930); _Richardson v. Mitchell_, 34 Tenn.App. 318, 237 S.W.2d 577 (1950); _Brewer v. Griggs_, 10 Tenn.App. 378, 394 (1929). Thus, since the trial court was authorized to try criminal cases and properly had the defendant before it, then it will be presumed that the trial court had jurisdiction of the defendant and the subject matter of his trial, and with nothing in the record to show a lack of jurisdiction, it follows that the defendant is in no position to assert that the trial court was without jurisdiction over his case. _See Bomar v. Stewart_, 201 Tenn. 480, 300 S.W.2d 885 (1957); _see also Shepard v. Henderson_, 1 Tenn.Cr.App. 694, 449 S.W.2d 726 (1969).

The defendant has not affirmatively shown, nor, as we have said, does it affirmatively appear from the record, that the defendant was tried in the wrong court. To the contrary, the record satisfactorily shows, as we have indicated heretofore, that the defendant was tried in the proper court. As a matter of fact, the defendant does not even contend that he was tried in the wrong court. His position is merely that the State was required to affirmative-

ly prove that the Gibson County Circuit Court was the court of proper jurisdiction.

Obviously, the Humboldt Law Court had no jurisdiction to try the defendant, but even if the defendant had so believed, then once the State proved venue of the crime to be in Gibson County, thus satisfying its burden of proof with regard to jurisdiction, then it would have been incumbent on the defendant to raise his jurisdictional question in the trial court, and to present his proof to show that the Gibson County Circuit Court lacked jurisdiction. We see no burden on the State in that regard. Since the defendant did not raise the issue in the trial court, and in the absence of anything on the face of the record to show a lack of jurisdiction of the trial court, then the trial court's jurisdiction may not be challenged by the defendant at this stage of the proceedings.

The defendant's final complaint is that he should have been sentenced by the trial judge, pursuant to the Criminal Sentencing Reform Act of 1982, T.C.A. § 40–35–101, *et seq.*, rather than by the jury.

■ If the crime was committed on or after July 1, 1982, then the trial judge was the proper sentencing authority; however, if the crime was committed prior to July 1, 1982, then the sentencing responsibility was upon the jury. T.C.A. § 40–35–112(a). The problem in the present case is that it is difficult to tell from the record the precise date on which the crime occurred. Nevertheless, after a minute inspection of the record, we conclude that the evidence is sufficient to justify the trial court's implicit finding that the crime occurred prior to July 1, 1982.

There is no question that the offense occurred prior to the time the victim and her mother moved from the house where the incident occurred and where they lived with the defendant. The mother, when asked how long they lived with the defendant at that location, testified that they lived there from March, 1982, until "[l]ast of June—first of July, somewhere in that area." Further, the mother testified that she was married in May of 1982, and that

after that they lived at the defendant's house for a little over a month or so before they moved out. Also, she said that it was "[a]bout three weeks after we moved out" when the victim told her about the event. We consider this latter testimony to be of some significance because the trial court's judgment shows that the defendant was credited on his sentence with jail time served from July 19, 1982, to July 23, 1982. This would indicate that the defendant was arrested for this offense on July 19, 1982. Considering this date in conjunction with the mother's testimony that she learned of the crime "[a]bout three weeks" after they moved out of the house, then it would be a reasonable deduction to conclude that they moved from the house around June 28, 1982. And we know that the assault on the victim occurred at some time previous to that approximate date.

After considering all of the above evidence, we are unable to say that the evidence preponderates against the trial judge's implicit determination that the crime occurred prior to July 1, 1982, thus warranting his decision to allow the jury to fix the sentence in this case.

Further, we point out that the record indicates that prior to the trial court's instructions to the jury, the parties and the court all felt that the prior law allowing the jury to set the punishment would be applicable to this case. The defendant entered no objection to the trial court's instructions at the time they were given.

Also, the defendant's conclusion that he would have been dealt with more leniently by judge sentencing rather than by jury sentencing might or might not be valid. The jury imposed upon the defendant the minimum sentence of not less than five (5) nor more than five (5) years. The defendant reasons that under T.C.A. § 40–35–501 of the Sentencing Reform Act his release eligibility date would be earlier than it would be under the prior jury sentencing law. However, the defendant overlooks the fact that the trial judge would have had the authority to set a greater sentence than the jury actually set. The sentence provid-

ed by law for aggravated sexual battery is not less than five (5) years nor more than thirty-five (35) years. T.C.A. § 39–2–606(b). Under the Sentencing Reform Act, the trial judge would have been empowered to impose upon the defendant a Range I determinate sentence for any definite number of years ranging from five (5) years up to and including twenty (20) years. T.C.A. §§ 40–35–109 and 40–35–211. Thus, it is only by speculation that it could be said that the defendant would have been dealt with more leniently by judge sentencing. It would be just as valid to speculate that the trial judge would have imposed a greater sentence than the jury did. The same speculations would be present if we were to remand this case for sentencing by the trial judge.

For all of the above reasons, we conclude that jury sentencing in this case was proper.

The judgment of the trial court is affirmed.

DWYER and SCOTT, JJ., concur.