NEW YORK CASUALTY CO., COMPLAINANT, APPELLANT, *v.*
C. C. LAWSON, DEFENDANT, APPELLEE.[*]

(*Nashville,* December Term, 1929.)

Opinion filed March 1, 1930.

330

CHARLES A. NOONE, for complainant, appellant.

S. P. RAULSTON and TOM C. KELLY, for defendant, appellee.

MR. SPECIAL JUSTICE WILLIAMS delivered the opinion of the Court.

This is a suit to enjoin the enforcement of a judgment at law. The defendant demurred to the bill; the chancellor sustained the demurrer; and the complainant has brought the case by appeal to this court.

The bill set forth the proceedings and exhibited the record in the action wherein the judgment attacked was obtained. Such proceedings were substantially as follows:

On September 17, 1928, C. C. Lawson caused an attachment to be issued by a justice of the peace against the property of Robert Harris and the Bird Motor Company. No ground was stated to authorize the issuance of the attachment. The affidavit upon which it issued merely alleged that Robert Harris and the Bird Motor Company were justly indebted to C. C. Lawson in the sum of $1000 damages for injury to his car done by a certain Buick car driven by Robert Harris. While both the affidavit and the attachment stated that suit had been commenced by a summons and that the amount laid therein was $1000, no summons actually issued. The Buick car was seized under the attachment by the sheriff. No publication was made to bring either Harris or the Motor Company before the court.

However, on September 26, 1928, Robert Hurst, as principal, and the New York Casualty Company, as surety, made what they inaccurately styled a forthcoming bond, payable to the sheriff and C. C. Lawson in the sum of $1000. It referred to the attachment proceedings and the seizure of the Buick car thereunder, stated that the car was the property of Robert Hurst, who had been misnamed as Robert Harris in the attachment proceedings, and asserted that such proceedings were illegal and void and that no appearance was made therein except to challenge their validity and to obtain possession of the car pending a determination thereof. The condition of the bond was that in the event the attachment was sustained Robert Hurst should restore the car or its reasonable value to the sheriff to satisfy any judgment the court might pronounce. The bond was taken and the car turned over to Robert Hurst.

Thereafter, on October 4, 1928, Robert Hurst, by his attorney, filed a written motion to quash the attachment, stating therein that he appeared specially and solely for that purpose. The grounds of the motion were that the court had no jurisdiction to issue the attachment; that no ground therefor was stated in the affidavit upon which it issued, and that it was neither original process nor ancillary to any pending cause. Thereupon Lawson moved the court to be permitted to amend the attachment so as to reduce the amount therein laid from $1000 to $500 and to allege that at the time of the injury the Buick car was being wilfully run in excess of thirty miles per hour upon the highway and that the defendant to the attachment was about secretly to move his property out of the county. The justice of the peace granted the motion to amend, overruled the motion to quash, and

gave judgment orally in favor of Lawson for $500, but without making any record entry thereof. Filing the oath in lieu of bond, Robert Hurst appealed the case to the circuit court.

Further than to appeal Robert Hurst did not appear in the circuit court but allowed the action there to proceed without making any defense to it. On February 28, 1929, the circuit court rendered judgment, sustaining the attachment, and awarding Lawson a recovery of $499.99 against Robert Hurst, principal, and the New York Casualty Company, surety, upon the replevy bond. The judgment provided that if within twenty days the Buick car should be delivered to the clerk of the circuit court to be sold by him, the proceeds of such sale would be credited on the judgment and the defendant therein released to that extent. The car was not delivered to the clerk and he issued execution on the judgment on March 29, 1929. After collecting by garnishment $10.09 of Robert Hurst, the sheriff made a *nulla bona* return May 29, 1929.

Lawson then advised the Commissioner of Insurance and Banking of the refusal of the New York Casualty Company to pay the judgment against it, and asked that its license to do business in Tennessee be revoked on account of such refusal; and the Commissioner notified it that its license would be revoked unless it either paid the judgment or took proper steps to test its validity.

Thereupon it filed the present bill, detailing the proceedings above set out and insisting that the judgment was void for the following reasons: (1) No ground was stated to warrant issuance of the attachment; (2) there was no summons or publication to bring defendants before the court; (3) the attachment being fatally defective

in matter of substance could not be amended so as to cure it; (4) the amount claimed in the attachment, being $1000 damages, was in excess of the jurisdiction of the justice of the peace and, consequently, in excess of the appellate jurisdiction of the circuit court; (5) the amendment reducing this amount to $500 merely reduced the amount laid in the attachment without reducing the amount claimed in the suit incident to the attachment; and (6) the justice of the peace did not sustain the attachment or render any judgment thereon and, therefore, the circuit court did not acquire any jurisdiction of the proceedings by reason of the attempt to appeal to that court. The prayer of the bill was that the judgment be declared void and that C. C. Lawson be perpetually enjoined from proceeding to enforce it as against complainant.

The grounds of defendant Lawson's demurrer to the bill were: (1) The judgment, if not a proper one, was at most merely erroneous and not void, and the chancery court, not being a court of review, had no jurisdiction to interfere with the enforcement of the judgment; (2) since complainant's principal on the bond, Robert Hurst, had made no question of his liability, the complainant could not do so, but was bound by the judgment against him; (3) no fraud, accident, mistake, or other ground for equitable relief was alleged; (4) complainant had a full, adequate, and complete remedy at law; and (5) complainant was estopped to deny the legality of the bond or the attachment proceedings under which complainant obtained the automobile.

Sustaining the demurrer, the chancellor decreed Lawson a recovery upon appellant's injunction bond for the amount of the judgment, interest and costs.

■ Thus the question arising below upon the pleadings and presented here by the assignments of error is whether the judgment is such that a court of chancery ought to intervene to prevent its enforcement. A court of chancery is not a court of review to correct errors committed by other courts, and it will not enjoin a judgment or decree merely because such judgment or decree is erroneous. But it will enjoin a judgment or decree which is void or one which is voidable for certain reasons recognized as grounds of equitable relief. Gibson's Suits in Chancery, section 814; *Ridgeway* v. *Bank,* 30 Tenn. (11 Humph.), 523; *Bell* v. *Williams,* 38 Tenn. (1 Head), 229.

■ The bill does not impeach the judgment as voidable upon any such ground of equitable relief. It attacks it as void. A void judgment is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment, which want of jurisdiction may be either of the person, or of the subject-matter generally, or of the particular question attempted to be decided or the relief assumed to be given. *Chickamauga Trust Co.* v. *Lonas,* 139 Tenn., 228, 235; *Van Vabry* v. *Staton,* 88 Tenn., 353; *Finley* v. *Gaut,* 67 Tenn. (8 Baxt.), 149; *Holmes* v. *Eason,* 76 Tenn. (8 Lea), 755.

■ It may be said that in the absence of such an affirmative showing of a jurisdictional defect there is a presumption that none existed. While this is the rule which is applied to a judgment of a court of general jurisdiction rendered in the exercise of such jurisdiction, it is not the rule for a judgment of a court of special and limited jurisdiction or for a judgment of a court of general jurisdiction where such judgment rests not upon such general jurisdiction but upon special and limited powers

derived from statute. The rule for a judgment of either of these kinds is that every jurisdictional fact must affirmatively appear upon the record or the judgment is void. This is true of judgments in attachment proceedings. *Harris* v. *Hadden,* 75 Tenn. (7 Lea), 215.; *Ingle* v. *McCurrey,* 48 Tenn. (1 Heisk.), 29; *Walker* v. *Cottrell,* 65 Tenn. (6 Baxt.), 256; *Pope* v. *Harrison,* 84 Tenn. (16 Lea), 82, 95.

▉ In this State jurisdiction of the subject-matter of attachments is derived from two sources: (1) As an incident to its powers with respect to extraordinary process a chancery court may issue attachments of property. These are sometimes called equitable attachments and they cannot issue except upon the *fiat* of a chancellor or judge. (2) Under our statutes chancery courts, circuit courts and justices of the peace are empowered to issue attachments of property in certain specific cases. These may be called statutory attachments and in the cases provided for they may be issued by the clerk and master without a *fiat* (Gibson's Suits in Chancery, sections 175, 872), or by the clerk of the circuit court, a circuit judge, a chancellor, or a justice of the peace (Shannon's Code, sections 5217, 5221). To authorize the issuance of one of these attachments certain facts prescribed in the statutes must be made to appear upon the record. In judicial attachments this is done by the officer's return on the summons (Shannon's Code, section 5226). In original and ancillary attachments it is done by proper affidavit. The affidavit must set forth some one of the causes of attachment enumerated in the statute and the character and justice of the claim (Shannon's Code, sections 5211, 5229); and for an ancillary attachment it must also sufficiently refer to the suit in

aid of which the attachment is sought. These matters required to be in the affidavit are jurisdictional and unless they substantially appear therein no jurisdiction is conferred upon the court to issue the attachment and all its proceedings thereon are void for want of jurisdiction of the subject-matter. *Woodfolk* v. *Whitworth*, 45 Tenn. (5 Cold.), 561; *Dillin* v. *O'Donnell*, 63 Tenn. (4 Baxt.), 213; *Maple* v. *Tunis*, 30 Tenn. (11 Humph.), 109; *Watt* v. *Carnes*, 51 Tenn. (4 Heisk.), 532; *Sullivan* v. *Fugate*, 48 Tenn. (1 Heisk.), 20.

In *Woodfolk* v. *Whitworth, supra,* an ancillary attachment had issued from the circuit court and been levied on certain bank stock and the stock had been ordered sold. Also a judgment had been taken against the bank as garnishee. The defect was that the affidavit and the writ did not sufficiently refer to the principal suit in aid of which the attachment had issued. It was held that by reason of this defect the court had no jurisdiction of the subject-matter of the attachment proceedings and its judgment thereon was void. (Id., pp. 555-557).

In *Dillin* v. *O'Donnell, supra,* a bill was filed in the chancery court to attach certain property which had been conveyed in trust by O'Donnell to pay debts due complainants. Subpoena to answer was issued and served upon O'Donnell, and attachments were issued by the clerk and master without a *fiat* of a chancellor or judge and without a statement of any one of the grounds of attachment enumerated in section 3455 of the Code. Some of the property seized under the attachment O'Donnell surrendered under agreement that it should be sold and the proceeds applied in part payment of his indebtedness. The balance of the property he replevied, giving

O. P. O'Donnell as his surety on his replevy bond. A *pro confesso* was taken against him and the chancellor awarded a recovery against him for the amount of the debts; allowed him a credit for the proceeds of the property sold, and rendered a decree against him and his surety on the replevy bond for the balance. The question on appeal was whether this decree on the bond was proper. This court held that the attachment could be sustained neither under the chancellor's power to issue extraordinary process, because it had issued without his *fiat,* nor under the clerk and master's authority to issue attachments by virtue of section 3455 of the Code because no ground therein set forth had been stated to authorize him to issue the attachment; that it was, therefore, void and conferred no rights on the sheriff.; that the replevy bond was unauthorized; and that no decree could be rendered upon the bond.

We think, under the authority of the decisions above cited, the judgment in the pending case is void. The justice lacked jurisdiction of the subject-matter of the attachment proceedings for the reason that no cause of attachment was stated in the affidavit.

We also think that the attempt to amend the affidavit so as to make it state a ground for attachment did not supply jurisdiction. Amendments are allowable to cure defects of form but not to substitute a valid for a void affidavit. *Keller* v. *Federal Bob Brannon Truck Co.,* 151 Tenn., 427.

Neither could the judgment of the circuit court give validity to the proceedings because it was the judgment of that court not by virtue of its original jurisdiction but only in the exercise of its appellate jurisdiction and in such a case the judgment for its validity must depend upon whether the justice had jurisdiction in the first

instance. *Harris* v. *Hadden,* 75 Tenn. (7 Lea), 215; *Flanagan* v. *Grocery Co.,* 98 Tenn., 601.

■ But it is insisted for appellee that the giving of the bond and the receiving of the automobile on the faith of the bond operated as an appearance and as an estoppel to question the validity of the bond or the legality of the proceedings.

Where the replevy of property attached operates to dissolve the attachment and discharge the property, and not merely to change its custodian without taking it out of the custody of the law, it is generally held that the execution of the replevy bond constitutes an appearance and operates as a waiver of any questions with respect to the jurisdiction of the court over the person of the defendant. 6 C. J., 337; L. R. A., 1916F, 587. This court has held that the replevy of property attached does dissolve the attachment and discharge the property and render it liable to other attachments. *Barry* v. *Frayser,* 57 Tenn. (10 Heisk.), 218; *Jacobi* v. *Schloss,* 47 Tenn. (7 Cold.), 285; *Frankle* v. *Douglas,* 69 Tenn. (1 Lea), 476. We think such replevy constitutes a general appearance. The Court of Appeals held to the contrary in *Smyth* v. *Moffet,* 6 Tenn. App., 381. This court was not called on to reviw that decision, which seems to have been reached without consideration of the cases just cited or sections 1094, 1095 and 5272 of Shannon's Code. We do not think it correctly states the law of this jurisdiction.

■ But a general appearance does not operate to validate attachment proceedings which are void as distinguished from those which are merely voidable, or to confer jurisdiction of the subject-matter where the court did not have it.

The annotator in 32 L. R. A. (N. S.), 407, says:

"Where the attachment proceedings are void, the obligors are held not to be precluded by the giving of a bond for the release of the attachment from attacking the attachment.

"Thus, a defective affidavit which renders an attachment void may be taken advantage of by a motion in the principal case, although a replevy bond has been issued. *Bruce* v. *Conyers*, 54 Ga., 678. The court said: 'Ordinarily, a replevy bond will dissolve an attachment, but where there is no valid attachment, and the defect is not amendable, there is nothing to dissolve. A void thing cannot be made the less void by calling it dissolved.' To the same effect is *Camp* v. *Cahn*, 53 Ga., 558."

Appellee invokes sections 1094, 1095 and 5272 of Shannon's Code to support his insistence. The substance of these sections is that where a defendant to attachment proceedings gives a bond to replevy the property attached and receives the property on the faith of such bond, he and his surety are estopped to deny the validity of the bond or the legality of the proceedings under which the property was received. We think the effect of these statutes is to preclude defendant and his surety from making any objection with respect to the form or execution of the bond, and from taking advantage of any informalities or defects in the proceedings which would render such proceedings voidable or erroneous, and from making any question upon any matter going to the jurisdiction of the court over the person of the defendant. We do not think these statutes can have the effect of validating void proceedings or of conferring jurisdiction of the subject-matter where the court had none. The case of *Dillin* v. *O'Donnell,* was decided after

the enactment of the statutes above referred to and we think that case settled the question. There the attachment was void. Some of the property seized under it was replevied and the court held that the bond was unauthorized and that no decree could properly be entered thereon.

In *Dickinson* v. *Redmond,* 3 Shannon's Cases, 620, it was held that one giving a bond to replevy property attached, was not by reason of these statutes estopped to assert that the attachment was void. The decision reached in that case is approved, although on questions not affecting the immediate issue there determined the court indicated conclusions which are not sustained by the law herein cited.

Appellee cites as authorities for his contention the following cases: *Stephens* v. *Iron Company,* 58 Tenn. (11 Heisk.), 79; *Ward* v. *Kent,* 74 Tenn. (6 Lea), 131; *Greenlaw* v. *Logan,* 70 Tenn. (2 Lea), 185; *Mercer* v. *Ewing,* 6 Higgins, 384. With the exception of the one last cited, none of them support appellee's position. In none of the cited decisions of this court was there involved any question of jurisdiction of the subject-matter. Pointing out the distinction between cases like these, where the judgments were not void but merely erroneous, and the case of *Dillin* v. *O'Donnell, supra,* where the judgment was void for want of jurisdiction of the subject-matter, and showing the difference between the application of the rule of estoppel in the two classes of cases, this court in one of the cases relied upon by appellee, *Greenlaw* v. *Logan, supra,* expressed itself as follows:

"*Dillin* v. *O'Donnell* (4 Baxt., 213), is distinctly put upon the ground that the process could only issue upon the *fiat* of a judge or order of a court. Judge FREEMAN,

delivering the opinion of the court, says, after stating the facts: 'In this view of the case, the attachment was extraordinary process, not such as is strictly under the provision of our Code, but such as could only be granted by the court or a judge. The attachment was, therefore, void, as issued by the clerk, as on his own *fiat,* and conferred no rights on the sheriff; the replevin bond was not authorized by law, and no decree could properly be entered on the same.'

"In this case no objection is taken to the jurisdiction issuing the attachment—the power is not questioned, nor can it be. The acts of the defendant specified in the writ and affidavit are statutory causes for attachment. The chief objections are, that the character of the demand is not sufficiently described; that the suit is not definitely set out, nor the court in which it is pending shown with proper certainty.

"No question is made of its jurisdiction of person and subject-matter." (2 Lea, 187-188.)

The case of *Mercer* v. *Ewing, supra,* seems to hold to the contrary of the view here expressed and seems to base such holding upon a mistaken view of this court's holding in *Stephens* v. *Iron Company, supra,* without referring to *Dillin* v. *O'Donnell, supra,* or noticing the distinction emphasized in *Greenlaw* v. *Logan, supra.* We think this decision was based upon a misappreciation of the authorities.

For these reasons we think the chancellor erred in sustaining the demurrer. What then should be our decree? If the cause should be remanded for answer, it is manifest that nothing could be alleged in the answer or shown in the proof to aid the judgment, it being a matter of record which cannot be averred against or aided by

evidence *aliunde*. A decree will, therefore, pass in this court vacating the chancellor's decree upon the replevy bond, declaring the judgment at law void and perpetually enjoining its execution as against appellant. The appellee will pay the costs of the cause.