IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 2, 2001 Session

## STACY HARRIS v. THOMAS HALL

**Appeal from the Circuit Court for Williamson County**
**No. I-98731    Jeffrey Bivins, Judge**

_____

**No. M2000-00784-COA-R3-CV - Filed November 28, 2001**

_____

This case was transferred to a judge in another county for "binding mediation," and the mediating judge entered an order dismissing the lawsuit and enjoining plaintiff from certain actions, including further litigation. The original trial court later denied the plaintiff's Tenn. R. Civ. P. 60.02 motion for relief from orders, and the plaintiff appealed. We find the trial court had no authority to order the case to any alternative dispute resolution procedure other than one established in Tenn. R. Sup. Ct. 31, that the mediating judge had no authority to dispose of the case and, consequently, all orders entered by that judge are void. We reverse the trial court's denial of Rule 60.02 relief, vacate orders entered in the court of the mediating judge, and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Stacy Harris, Pro Se, Nashville, Tennessee.

Roger T. May, Alan D. Johnson, Nashville, Tennessee, for the appellee, Thomas Hall.

### OPINION

Ms. Harris had a dispute with the defendant, the factual basis of which is not apparent in the record before us. In any event, she filed a civil warrant in Williamson County General Sessions Court, which summoned Mr. Hall to appear and answer for "intentional interference with another's business, outrageous conduct, [and] intentional and negligent infliction of severe emotional distress." The matter was set for November 23, 1998. Apparently, the case was heard by the general sessions court and was dismissed with prejudice. A $10,000 appeal bond was set. Ms. Harris appealed to the Williamson County Circuit Court.

She submitted a list of witnesses she intended to call, and in early January 1999, had each of them summoned to appear in court on March 23, 1999. On February 3, 1999, Ms. Harris moved to refer the matter to arbitration pursuant to Tenn. R. Sup. Ct. 31. On February 17, 1999, the Circuit Court of Williamson County entered an agreed order transferring the case to the Third Circuit Court of Davidson County for "binding mediation" by the judge of that court. The agreed order, signed by Ms. Harris, stated:

> By agreement of the parties, pursuant to the filing of the Motion for Arbitration by the Plaintiff, Stacy Harris, this case will be submitted to binding mediation. This Court is informed that . . . Judge of the Third Circuit Court for Davidson County, has agreed to mediate this case. Venue in this case is waived by agreement of the parties and therefore this case may be transferred to Third Circuit Court, Davidson County.

The mediating judge issued an order regarding preparation for the mediation, which was also referred to in the order as a judicial settlement conference. The mediation or judicial settlement conference was held on April 1, 1999. Subsequently, on April 5, the judge, sitting as mediator, entered an order which stated,

> "[T]his court is of the opinion that the General Sessions Appeal in the above-styled case should be dismissed. The Court is further of the opinion that the plaintiff should have no further contact with the defendant or any of his employees, associates, relatives or agents and that any further litigation of this matter would not be judicially efficient."

The order dismissed the case, enjoined Ms. Harris from any contact with the above named people, enjoined her "from pursuing further litigation involving this defendant, his family or associates," ordered Ms. Harris to pay costs, and transferred the matter "to the Circuit Court for Williamson County at Franklin for enforcement of this Order."

Ms. Harris apparently filed a motion requesting additional findings of fact or a new trial.[1] The motion is not part of the record, but the court's order, dated August 11, 1999, denying the motion appears there. The August order states, "This Court is further of the opinion that the previous Order of the Court, entered April 5, 1999, is unambiguous, and clearly states that the case has been transferred to Williamson County."

At some point, Ms. Harris obtained counsel. Despite the Davidson County Circuit Court's earlier order and statement reiterating that the case had been transferred to Williamson County, the Davidson County court entered two additional orders which Ms. Harris's attorneys signed. The "Agreed Amended Order," entered in Davidson County on September 10, 1999, contained

---

[1]The record includes Defendant's motion to reset the hearing on Ms. Harris's motion for new trial which indicates her motion was filed on or about April 29, 1999.

-2-

essentially the same findings and orders as the court's initial order, but purported to document agreement by the parties as to some of those findings.

In relevant part, the first agreed amended order states:

> The court is further of the opinion, and the parties have agreed, as is evidenced by the signatures of their respective counsel, below, that the plaintiff should not have any further contact with the other party, either directly or through any employees, associates, relatives or agents, and that any further litigation of this matter would not be judicially efficient. In addition, the parties have agreed, as is evidenced by the signatures of their respective counsel, below, that each shall waive any right of appeal in this cause that either may have had.

The attorneys then signed a Second Agreed Amended Order, entered in Davidson County on October 6, 1999, which states that it was entered to correct typographical errors found in the Agreed Amended Order. However, the "typographical error" correction involved deleting the phrase "and the parties have agreed, as is evidenced by the signatures of their respective counsel, below" from the first sentence of the passage quoted above. The effect was to remove the parties' agreement from the findings supporting the court's order enjoining Ms. Harris from further contact with Mr. Hall. The amendment did not, however, delete the language that the parties agreed to waive any right of appeal from the order. Again, each of the two amended orders transferred the case to Williamson County for enforcement.

Ms. Harris filed a Motion for Relief from Judgments or Orders in the Circuit Court of Williamson County on February 15, 2000, in which she objected to the Agreed Amended Orders on several grounds. The portion of the Tenn. R. Civ. P. 60.02 motion which is relevant to this appeal[2] provides:

> The Second Agreed Amended Order transferred to this Honorable Court for its enforcement is, in effect, a restraining order that could not be secured independently due to lack of grounds. Indeed, over the nearly 28 years that the Defendant has known the Plaintiff the Defendant has had ample opportunity to request a restraining order, had that been his wish, but the Defendant has never indicated the desire nor the justification to do so.

> Whereas the language of the Second Agreed Amended Order is overly broad and unfairly stigmatizes the Plaintiff, whereas the Defendant has never accused the Plaintiff of, nor charged the Plaintiff with, harassment, stalking, making threats or

---

[2]A number of the factual allegations made by Ms. Harris in this motion relate to events occurring in or before the General Sessions Court's proceedings. Since Ms. Harris perfected an appeal *de novo* to the Circuit Court, those allegations are not relevant to the issues in this appeal in which Ms. Harris seeks reversal of the Circuit Court's denial of her motion for relief from judgment.

associated behaviors normally necessary to secure such an Order, whereas the Defendant would not agree to a provision of the proposed Second Agreed Amended Order prohibiting him from further contact with the Plaintiff, whereas the Plaintiff has been in compliance in with Second Agreed Amended Order, the Plaintiff prays the Court rule the Second Agreed Amended Order lacks justification and relieve the Plaintiff from all prior judgments and/or orders entered in the above-styled case, awarding the Plaintiff the costs of this action and general relief.

On March 15, 2000, apparently without a hearing, the Williamson County Circuit Court found Ms. Harris's motion to be without merit and found that the motion "appears on its face to be constitute a violation of the injunction entered by the Circuit Court of Davidson County in its order of April 5, 1999." The court then denied the motion. Ms. Harris appealed and has appeared *pro se* before this court.

## I. Transfer for Mediation

Ms. Harris's basic complaint is that she asked for and agreed to a dispute resolution procedure which was designed to resolve her dispute through agreement of the parties. Instead, it resulted in a court order dismissing her case and enjoining her from certain conduct. We concur that a party who agrees to pursue settlement pursuant to a process recognized by Tenn. R. Sup. Ct. 31 does not waive his or her rights to resolution of pending litigation according to the well-established requirements of litigation procedure if such settlement attempt is not successful.

The Supreme Court of Tennessee, in the exercise of its responsibility to supervise the administration of justice in our courts, has established "a system of court-annexed alternative dispute resolution methods" whose purpose is to make the process of dispute resolution more efficient, more economical, and equally fair." Tenn. R. Sup. Ct. 31 pmbl. The procedures comprising this system have been promulgated as Rule 31 of the Rules of the Supreme Court.

The agreed order transferring the case herein to the Davidson County judge stated the purpose was "binding mediation." In filings below, the defendant has asserted that by signing this order Ms. Harris agreed to a procedure whereby the parties would be bound by the mediator's decision, referring to the process alternatively as arbitration and binding mediation. Regardless of the terminology used in the transfer order, we find that the matter was transferred for mediation.

This conclusion is compelled, first, by the language of Rule 31, which governs all court-annexed alternative dispute resolution. Since the transfer order was entered by a court in the context of ongoing litigation and since the dispute resolution was attempted by a judicial officer, there can be no question that this was a court-annexed procedure and, consequently, subject to Rule 31.[3] The Rule gives courts authority to order parties to participate in alternative dispute resolution procedures, but limits that authority regarding the types of resolution.

---

[3]In addition, the motion prompting the transfer relied on Rule 31 as its basis.

Pursuant to the provisions of this Rule, a court may order the parties to an eligible civil action to participate in an alternative dispute resolution proceeding in accordance with this Rule.

Tenn. R. Sup. Ct. 31 § 1. And,

After all the parties are before the court, the court may, on its own motion or on the motion of any party, order the parties to participate in alternative dispute resolution proceedings authorized by these rules.

*Id.* at § 10(a).[4]

Thus, a court's authority to refer a case to alternative dispute resolution is limited to those procedures authorized by the rule. Rule 31 does not recognize arbitration or binding mediation as an available procedure for court-annexed dispute resolution. The proceedings authorized by the rules include mediation, judicial settlement conference, non-binding arbitration, case evaluation, mini-trial, and summary jury trial. *Id.* at §2. A review of the definitions of these procedures makes it clear that each of them requires agreement by the parties for any resolution of the dispute as an alternative to resolution through the well-established procedures governing litigation. They are settlement procedures. Conspicuous in its absence is a procedure for "binding mediation."

The case was transferred for mediation by a judge. Rule 31 identifies such a procedure as a judicial settlement conference, which is "a mediation conducted by a judicial officer other than the judge before whom the case will be tried." Tenn. R. Sup. Ct. 31 §2(d). The judicial officer to whom the case was transferred initially treated it as a transfer for a judicial settlement conference. The mediating judge's first order required certain filings prior to what the court termed a settlement conference. This pre-conference order also referred to the proceeding as a "Voluntary Settlement." Thus, the initial order by the mediating judge is consistent with our holding that the case was transferred for mediation by a judicial officer; thus, the proceeding was a judicial settlement conference.

Having determined that the matter was referred for mediation, we must determined whether the orders entered subsequent to the mediation or settlement conference are authorized by Rule 31.

---

[4] Section 3 of the rule distinguishes those procedures which can be ordered by the court and those which also need consent of the parties.

Upon motion of either party, or upon its own motion, a court, by order of reference, may order the parties to an eligible civil action to participate in a judicial settlement conference, mediation, or case evaluation. Upon motion of either party, or upon the court's motion, and with the consent of all parties, a court, by order of reference, may order the parties to participate in non-binding arbitration, mini-trial, summary jury trial, or other appropriate alternative dispute resolution proceedings.

Tenn. R. Sup. Ct. 31 § 3.

We find there are two problems with those orders. First, there is no authority for a mediator, including a judicial officer, to enter an order disposing of a case. Second, there is no authority allowing a mediator, including a judge, to substitute his or her judgment of the merits of the case for agreement of the parties as to settlement.

Mediation is "an informal process in which a neutral person, called a mediator, conducts discussions among the disputing parties designed to enable them to reach a mutually acceptable agreement among themselves on all or any part of the issues in dispute." Tenn. R. Sup. Ct. 31 § 2(c). A mediator has limited authority.

> A dispute resolution neutral, including a judge acting in that capacity, has no authority to dispose of a case or to enter an order disposing of a case. The neutral's powers include only the filing of a report indicating whether the case was completely settled or partially settled. Tenn. R. Sup. Ct. 31 § 8. Therefore Rule 31 did not vest the settlement judge herein, in his role as mediator, with authority to enter an order disposing of the case.

*Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 540 (Tenn. Ct. App. 2000).

Significantly, Rule 31 specifically limits mediation by a judicial officer to one who is not the judge before whom the case will be tried if it proceeds to trial. Tenn. R. Sup. Ct. 31§2(d). Thus, a judge who is acting as a mediator is not authorized to exercise judicial power with regard to the matter being mediated. In addition, a specific prohibition exists:

> A person serving as a Rule 31 dispute resolution neutral in an alternative dispute resolution proceeding shall not participate as attorney, advisor, judge, guardian-ad-litem, master or in any other judicial, or quasi-judicial capacity in the matter in which the alternative dispute resolution proceeding was conducted.

Tenn. R. Sup. Ct. 31 § 12(i). Thus, an order of reference for mediation, or for judicial settlement conference, does not confer authority to the mediating judge to enter an order, in the exercise of judicial power, disposing of the case. Rule 31 provides no such authority, and in fact limits the mediator's authority to a report to the court before whom the case is pending.

Absent authority from Rule 31, the question arises whether the parties agreed that the mediating court could enter an order disposing of the case. *Environmental Abatement* dealt with the authority of the mediating judge to enter an order reflecting an agreement which had been reached at a settlement conference when agreement had been withdrawn prior to entry of the order. In addition to other holdings, this court found the mediating judge had no authority by virtue of Rule 31 to enter an order dismissing the case. In addition, we also found that there was no agreement by the parties that the settlement judge, acting as a mediator, could dispose of the case. *Id.* In *Environmental Abatement*, we left open the question of whether an appropriate agreement and transfer order would allow the mediating judge to enter an order of compromise and settlement

reached after mediation. We still leave that question open because, although the transfer order herein recites that the parties waived venue, which could be interpreted as agreement that the mediating court could enter an order resulting from the mediation, the orders entered by the mediating court were not the product of settlement agreement by the parties.

The transfer order is clear that the transfer was agreed to and made solely for purposes of the mediation. A transfer for mediation is not a transfer for disposition on any basis other than agreement of the parties. There is nothing in Rule 31 which authorizes any sort of alternative dispute resolution process which removes the agreement of the parties as a requirement. Thus, there is no authority to support an interpretation of the term "binding mediation" used in the transfer order as granting authority to the mediator to substitute its judgment of the merits of the dispute for an agreement between the parties.

Methods available to private parties for resolution of their disputes without recourse to courts abound. The Supreme Court has recognized that in the private sector various practices exist for dispute resolution. Rule 31 does not affect those practices. Tenn. R. Sup. Ct. 31 § 1. One example of such private procedures allowing for a binding decision made without recourse to the rules governing litigation is arbitration pursuant to Tennessee's version of the Uniform Arbitration Act, Tenn. Code Ann. §§ 29-5-301 et. seq. Arbitration is a procedure resulting from an agreement by the parties to substitute "a tribunal of their own choosing for the one provided and established by law." *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445, 452 (Tenn. 1996). Thus, arbitration is an extra judicial procedure. Although the Act authorizes courts to enforce agreements to arbitrate and to enter judgment on the award resulting from an arbitration, Tenn. Code Ann. § 29-5-302, we find no authority for a judge to act as an arbitrator. Because arbitration is an extra judicial procedure and not available as a court-annexed alternative dispute resolution method, the procedure herein cannot be accurately described as an arbitration. In addition, the Act includes protections "to prevent parties from being victimized by the very finality that makes arbitration the procedure of choice for certain types of disputes." *Smith v. Smith*, 989 S.W.2d 346, 348 (Tenn. Ct. App. 1999). Among those protections is a written agreement to arbitrate. *Id.* There is no such written agreement in the record before us. Therefore, to the extent the defendant argues that the orders herein constitute an arbitration award which cannot be vacated absent certain statutorily defined circumstances, we find such argument inapplicable to the orders which resulted from the mediation procedures herein.

We conclude that the case was transferred to the judicial officer in Davidson County for the purpose of conducting a mediation as that term is defined in Rule 31 of the Rules of the Tennessee Supreme Court. Accordingly, we conclude that the mediating court was without authority to order dismissal of the case or to enjoin action by any party.

II.

The issue before us is whether the trial court in Williamson County properly denied Ms. Harris's motion for relief from judgment or orders, filed pursuant to Tenn. R. Civ. P. 60.02. As the defendant correctly asserts, this court's review of that decision is limited to whether the trial court

abused its discretion.[5]  *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993).  The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives.  *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation, or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.  *Id.*

> Rule 60.02  provides:
>
> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated as intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.

Relief under Rule 60.02 is considered "an exceptional remedy."  *Nails v. Aetna Ins. Co.*, 834 S.W.2d 275, 294 (Tenn. 1992).  The function of the rule is "to strike a proper balance between the competing principles of finality and justice."  *Banks v. Dement Constr. Co., Inc.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976)).  In examining the purpose of Tenn. R. Civ. P. 60.02, our Supreme Court has said:

> "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. . . ."  Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.

*Banks*, 817 S.W.2d at 18 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991)).

The defendant asserts that Ms. Harris's motion cited only Tenn. R. Civ. P. 60.02(5) as its basis, and that she cannot now seek relief under any other subsection of the rule, primarily referring to her arguments in support of relief under subsections (1) and (2).  However, at the time of the filing of the motion for relief from judgment, Ms. Harris was unrepresented by counsel and filed the motion *pro se.*

---

[5]There is authority, however, for the proposition that a court has no discretion to deny relief from a void order.

Parties who represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). Courts should take into account that many *pro se* litigants have no legal training and little familiarity with the judicial system. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). While courts may not allow *pro se* litigants to shift the burden of litigation to the courts or the opposing party and may not excuse a *pro se* litigant from complying with the same substantive and procedural rules that represented parties are expected to observe, *Edmunson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996), courts give *pro se* litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and other legal filings. *Whitaker*, 32 S.W.3d at 227. Accordingly, we measure the papers prepared by *pro se* litigants using standards that are less stringent than those applied to papers prepared by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9-10, 101 S. Ct. 173, 176 (1980); *Winchester v. Little*, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998). Even though courts cannot create claims or defenses for *pro se* litigants where none exist, *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994), they should give effect to the substance, rather than the form or terminology, of a *pro se* litigant's papers. *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. Ct. App. 1986); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977).

Ms. Harris's motion clearly questions the validity of the orders of the mediating judge. We think a fair reading of that motion would include a claim that those orders were void. A void judgment lacks validity anywhere and is subject to attack from any angle. *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 701, 389 S.W.2d 266, 271 (1965); *Acuff v. Daniel*, 215 Tenn. 520, 525, 387 S.W.2d 796, 798 (1965). Neither the trial court nor this court can enforce a judgment which is void. The issue of the validity of the judgments and orders herein has been raised, and, if the judgment is void, Ms. Harris has stated a claim for relief under Tenn. R. Civ. P. 60.02(3).

To be found void, a judgment must have been rendered by a court lacking jurisdiction over the subject matter or the parties or acting in some other manner inconsistent with the requirements of due process. *Magnavox Co. v. Boles & Hite Constr. Co.*, 583 S.W.2d 611, 613 (Tenn. Ct. App. 1979). In *New York Casualty Co. v. Lawson*, 160 Tenn. 329, 24 S.W.2d 881 (1930), our Supreme Court said:

> A void judgment is one which shows upon the face of the record a want of jurisdiction in the court assuming to render the judgment, which want of jurisdiction may be either of the person, or of the subject-matter generally, or of the particular question attempted to be decided or the relief assumed to be given. (Citations omitted).

160 Tenn. at 336, 24 S.W.2d at 883.

A court cannot validly adjudicate upon a subject matter which does not fall within its province as defined and limited by law. *See Chickamauga Trust Co. v. Lonas*, 139 Tenn. 228, 201 S.W. 777 (1917). As stated in the Restatement, "A judgment may properly be rendered against a

party only if the court has authority to adjudicate the type of controversy involved in the action." RESTATEMENT (SECOND) OF THE LAW OF JUDGMENTS § 11 (1982). In *Chickamauga*, the Court said:

> "Even where a court has jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted it by the law of its organization, its decree is void. Thus, a judgment may be collaterally attacked where the court had jurisdiction of the parties and the subject-matter of action, but did not have jurisdiction of the question which the judgment assumed to determine, or to grant the particular relief which it assumed to afford to the litigants. . . ."

139 Tenn. at 235-36, 201 S.W. at 778-79 (citation omitted).

We have already determined that the mediating judge had no authority to dispose of this case on the merits. While authorized to mediate the dispute, the court dismissed Ms. Harris's case and enjoined Ms. Harris from contacting the defendant. Authority to dismiss complaints and to issue injunctions lies in those authorized to wield the judicial power of the state, and a mediating judge has no such authority regarding a matter submitted for mediation or judicial settlement conference. The limits of the mediating judge's authority were established by Rule 31 of the Tennessee Supreme Court and by the transfer order based upon that rule. Thus, the order entered by the mediating court on April 5, 1999, was void.

It is well settled that a void judgment cannot be enforced and that "judgments or decrees which have been declared to be void bind nobody, bar nobody, are nullities, and justify no act done thereafter." *Hinton v. Robinson*, 51 Tenn. App. 1, 6, 364 S.W.2d 97, 99 (1962). "From its inception, a void judgment continues to be absolutely null. It is incapable of being confirmed, ratified, or enforced in any manner or to any degree." *Guinn v. Guinn*, No. W1999-01809-COA-R3-CV, 2001 WL 359243, at *5 (Tenn. Ct. App. April 6, 2001) (no Tenn. R. App. P. 11 application filed) (quoting BLACK'S LAW DICTIONARY 848 (7th ed. 1999). Accordingly, the trial court's dismissal of Ms. Harris's Tenn. R. Civ. P. 60 motion on the basis that it violated the April 5 order of the Davidson County court is reversed.

Under Tenn. R. Sup. Ct. 31, the action available to the mediating judge in the event that a settlement was not reached by the parties was to report back to the trial court (the court with authority to dispose of the litigation). Had such a report been made in this case after the judicial settlement conference or mediation, the litigation would have been lodged in the Williamson County Circuit Court for trial or other appropriate resolution. None of the orders subsequent to the void April 5 order should have been entered in Davidson County Circuit Court because that court had no jurisdiction beyond reporting the results of the mediation. Additionally, a void order cannot be amended. The attempt at settlement through alternative dispute resolution pursuant to Rule 31 having been unsuccessful, the case is at the same procedural posture as it was prior to the transfer for mediation.

III.

The defendant asserts, however, that Ms. Harris is precluded from seeking post judgment relief from an agreed order, relying on the principle that "[w]here a decree is made by consent of counsel, there lies not an appeal or re-hearing, though the party did not really give his consent . . . ." *Kelly v. Walker*, 208 Tenn. 388, 392, 346 S.W.2d 253, 255 (1961). Because her attorneys executed the "agreed orders," the defendant asserts that Ms. Harris is deemed to have made a deliberate decision to consent to their provisions, because "counsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy." *Davidson v. Davidson*, 916 S.W.2d 918, 921 (Tenn. Ct. App. 1995).

The effect of the "agreed orders" is not entirely clear. First, they were entered after the Davidson County court transferred the case back to Williamson County and after the Davidson County court reaffirmed its transfer. In addition, the signature of the attorneys is preceded by the words "Approved for Entry," generally an indication that the attorneys merely agree that the substance of the order coincides with the ruling of the court, not that the substance of the orders is the result of agreement of the parties. Since the "Agreed Amended Orders" simply, in large part, repeat the findings and orders of the court as set out in the April 5 order, the "Approved for Entry" designation is consistent with the generally accepted understanding of that term. The only portion of the order which purports to represent an agreement of the parties regards the waiver of any right of appeal. The fact that no agreement of the parties existed with regard to the other portions of the order is evidenced by the correction made in the Second Agreed Amended Order which removed the "parties have agreed" language from the injunction from further contact. Thus, in large part, the amending "agreed orders" are simply further orders of the mediating judge.

In any event, the two orders attempt to amend an order we have determined was void. As this court has stated, "a void judgment or decree cannot be amended because such a judgment or decree is a complete nullity." *Guinn*, 2001 WL 359243, at *5. Therefore, we find the attempted amendment ineffective and the "agreed orders" entered subsequent to the void order also void and of no effect.

The one portion of the Second Agreed Order which purported to constitute an agreement between the parties stated "the parties have agreed, as is evidenced by the signatures of their respective counsel, below, that each shall waive any right of appeal in this cause that either may have had." Had the original order of April 5 or the attempts to amend that order not been void, it could be argued that Ms. Harris waived her right to challenge the disposition set out in the April 5 order. Waiver is a voluntary relinquishment of a known right or privilege. *Estate Faught v. Faught*, 730 S.W.2d 323, 325 (Tenn. 1987); *Chattem, Inc. v. Provident Life & Accident Ins. Co.*, 676 S.W.2d 953, 955 (Tenn. 1984). "Thus, when an individual does not know of his rights or when he fails to understand them, there can be no effective waiver of those rights." *Faught*, 730 S.W.2d at 326.

The April 5 order stated that "further litigation of this matter would not be judicially efficient" and had ordered that "any further litigation of this issue would be moot and the plaintiff is therefore enjoined from pursuing further litigation involving this defendant, his family or associates." Thus, at the time of the attempted amended orders, Ms. Harris had been precluded by court order from further attempts at judicial relief in this matter. The Williamson County court obviously found this order to be enforceable. Thus, the question of whether Ms. Harris, through her counsel, waived a right she knew existed at the time of the "agreed" orders is not easily answered. However, we need not determine the answer to that question because the April 5 order and all subsequent orders are void. Thus, no portion of those orders, including the waiver of appeal, may be enforced as a court judgment. Because a void order may be attacked at any time and from any angle, Ms. Harris is not precluded from seeking relief from such order by the agreement set out in a later order which is itself void.

We are unaware of any authority for a trial court to enjoin a party from appealing an order of that court, and any such attempted injunction would, in our opinion, be contrary to public policy and to constitutional guarantees of access to the courts. Although the trial court's orders herein were based upon a transfer for mediation, no mutually agreeable settlement of the merits of the dispute was reached. Thus, while parties may, as part of a settlement agreement, agree not to pursue the dispute further, the orders in this case are not the product of such agreement. We can only conclude that the orders were intended to be an exercise of judicial authority, and we have determined that exercise to be void.

Even a valid consent judgment "does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court." *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987). To the extent the defendant believes the Second Amended Order includes an enforceable agreement between the parties, he is not without remedy. Because an agreement to compromise and settle litigation is a contract between the parties to that litigation, issues of the enforceability and interpretation of that agreement are governed by contract law. *Environmental Abatement*, 27 S.W.3d at 539. Such an agreement may be a binding contract, subject to being enforced as other contracts. *Harbour*, 732 S.W.2d at 599-600.

The issue before us, however, is not whether the defendant has a cause of action to enforce an agreement with Ms. Harris not to appeal the orders entered in the Davidson County court by the mediating judge. Rather, the question is whether Ms. Harris is entitled to relief from those orders. We decline to enforce any part of the void orders and find that Ms. Harris is not precluded from relief from such orders. Because we have found the orders are void, they are unenforceable; therefore, it would make little sense for this court to refuse to vacate them.

We reverse the trial court's decision denying Ms. Harris's request for relief from orders under Tenn. R. Civ. P. 60.02. Further, we vacate all orders entered in the Davidson County Circuit Court. The case is remanded to the Circuit Court for Williamson County for appropriate proceedings. Costs are taxed to the Appellee.

_____
PATRICIA J. COTTRELL, JUDGE